1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation, | **Civil Case No.** 3:21-cv-00191-L-BLM |
| Plaintiffs, | **CONSENT DECREE** |
| vs. | |
| CAL C. JOHNSON, doing business as American Recycling, an individual, | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |
| Defendant. | |

## CONSENT DECREE

The following Consent Decree (or "Agreement") is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF") (collectively, "Plaintiffs") and Cal C. Johnson, doing business as American Recycling, ("Defendant"). The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties."

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS**, CERF contends it was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and contends that one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, Defendant is owner and operator of a recycling facility located at 4070 and 4080 Home Avenue, San Diego, California 92105 ("Facility");

**WHEREAS**, Plaintiffs contend their members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the Facility, including specifically Chollas Creek, San Diego Bay, and eventually the Pacific Ocean;

**WHEREAS**, the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, and as amended by Order No. 2014-0057-DWQ, as amended in 2015 and 2018 ("Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et*

*seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on June 25, 2020, Plaintiffs sent Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("First Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility;

**WHEREAS**, on November 25, 2020, Plaintiffs sent a second Notice Letter to Defendant, the EPA, State Board and Regional Board ("Second Notice Letter");

**WHEREAS**, on February 1, 2021, Plaintiffs filed a complaint against Defendant in the United States District Court, Southern District of California (Case No. 3:21-cv-00131-L-BLM), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint");

**WHEREAS**, Plaintiffs allege Defendant to be in violation of the substantive and procedural requirements of the Permit, and the Clean Water Act with respect to the Facility;

**WHEREAS**, Defendant denies all allegations in the First and Second Notice Letter and Complaint relating to the Facility;

**WHEREAS**, Plaintiffs and Defendant have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to

1   Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2       2.    Venue is appropriate in the Southern District of California pursuant to Section

3   505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located

4   within this District;

5       3.    The Complaint states claims upon which relief may be granted pursuant to

6   Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

7       4.    Plaintiffs have standing to bring this action;

8       5.    The Court shall retain jurisdiction over this matter for purposes of enforcing

9   the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as

10   is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.   OBJECTIVES

12       6.    It is the express purpose of the Settling Parties entering into this Consent

13   Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et*

14   *seq*., and to resolve the allegations by Plaintiffs in their Complaint. In light of these

15   objectives and as set forth fully below, Defendant agrees to comply with the provisions of

16   this Consent Decree and to comply with the requirements of the Permit and all applicable

17   provisions of the Clean Water Act. Specifically, Defendant agrees to comply with

18   Receiving Water Limitation VI.A. of the Permit which requires that Defendant "shall

19   ensure that industrial storm water discharges and authorized Non-Storm Water Discharges

20   ("NSWDs") do not cause or contribute to the exceedance of any applicable water quality

21   standards in any affected receiving water," and Effluent Limitation V.A. of the Permit

22   which requires that Defendant "shall implement Best Management Practices ("BMPs") that

23   comply with the BAT/BCT requirements of the Permit to reduce or prevent discharges of

24   pollutants in Defendant's storm water discharge in a manner that reflects best industry

25   practice considering technological availability and economic practicability and

26   achievability." Defendant shall develop and implement BMPs necessary to achieve

27   compliance with BAT/BCT standards and with the applicable water quality standards as

28   those terms are defined by the Permit.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

7.      Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant if requested.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

8.      The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

9.      This Consent Decree shall terminate three (3) years after the Effective Date unless Early Termination is triggered pursuant to paragraph 10 of this Agreement (the earlier of which shall be the "Termination Date" as used in this Consent Decree).

10.     This Consent Decree will terminate early ("Early Termination") in the following circumstances:

10.1   If Defendant ceases its operations at the Facility, is no longer subject to the Permit, or files a Notice of Termination (NOT) via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the Permit section II.C.1, and the NOT is accepted by the State or Regional Board; or

10.2   If Defendant files a Non-Exposure Certification (NEC) via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the Permit section II.B.1, and the NEC is accepted by the State or Regional Board

10.3    Otherwise by mutual agreement of the Parties, after notice to the Department of Justice.

11.    Plaintiffs may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date.  The inspection shall be conducted according to the rules applicable to Annual Site Inspections described below.

### III.    COMMITMENTS OF THE PARTIES

### A.    Storm Water Pollution Control Best Management Practices.

12.    Defendant shall develop and ensure the ongoing maintenance and implementation of (as applicable) appropriate Best Management Practices ("BMPs") necessary to comply with the Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and to comply with the Permit's Receiving Water Limitations.

13.    The BMPs that Defendant plans to maintain and/or develop and implement for the Facility as part of this Agreement are described in Exhibit A.

### B.    Discharge Locations and Storm Water Sampling.

14.    Discharge Locations. The current storm water sample locations ("Discharge Locations") for the Facility are identified in Exhibit A.  Should the Discharge Locations change from what is presently depicted on Exhibit A, Defendant will provide Plaintiffs with an updated exhibit.

15.    Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

15.1    Frequency. During the life of this Agreement, Defendant shall collect samples from all Discharge Locations at the Facility from a minimum of four (4) "qualified storm events" ("QSEs"), as defined by the Permit, that occur in a "Reporting Year," as defined by the Permit, such that Defendant collect two (2) samples during the first half of the Reporting Year and two (2) samples during the second half of the Reporting Year, if any QSE's occur during said periods. Defendant can discontinue storm water sample

analysis of a parameter listed in Table 1 if it is not detected in two consecutive sampling events. If, prior to March 1, Defendant has collected samples from two (2) or fewer QSEs during that Reporting Year, Defendant shall collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the Reporting Year, if feasible.  No two (2) samples may be from the same QSE.

      15.2  Contained or Stored Storm Water. Defendant shall sample stored or contained storm water discharges from Discharge Locations at the Facility, if any, pursuant to Section XI.B.4 of the Permit.

      15.3   Parameters. Defendant shall analyze each storm water sample collected from a Discharge Location, pursuant to paragraph 15.1 or 15.2, for the parameters set forth in the below Table 1 Numeric Levels.

      15.4   Laboratory. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Agreement.

      15.5   Detection Levels. Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Levels.

      15.6   Hold Time. All samples collected from the Facility shall be delivered to the laboratory as necessary, using reasonable best efforts, to ensure that sample "hold time" is not exceeded for each contaminant sampled.

      15.7   Results. Defendant shall request that sample analysis results be reported to them as soon as possible without incurring "rush" charges.

      15.8   Reporting. Defendant shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 15.1 and 15.2 collected at the Facility, within ten (10) business days of receiving the results.

**C.   Reduction of Pollutants in Discharges.**

      16.   Contaminant Reduction. Unless otherwise provided by this Agreement,

Defendant shall develop and implement BMPs to reduce pollutants in storm water discharges from the Facility to levels at or below those in Table 1 ("Numeric Levels").[1]

**Table 1**

| Pollutant | Numeric Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc* | 0.12 mg/L |
| Total Recoverable Copper* | .013 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 1.0 mg/L |
| Total Recoverable Lead* | 0.065 mg/L |
| Chemical Oxygen Demand ("COD") | 120 mg/L |
| pH | 6.5-8.5    s.u. |

*In the case of copper, lead, and zinc, the values may be adjusted based on hardness pursuant to the California Toxics Rule and Permit. The more conservative value of the NALs and the hardness-adjusted California Toxics Rule values shall apply for these constituents.

17.    <u>Action Plan for Table 1 Exceedances</u>. If Defendant's monitoring reveals an exceedance of the Numeric Limits specified in Table 1 at any Discharge Location between July 1 and June 30 of any reporting year and there is not already an Action Plan[2] currently being prepared or in the process of being implemented by Defendant to address or that will address that pollutant ("Action Plan Triggering Event"), Defendant shall prepare an Action Plan for the Facility intended to reduce the Numeric Level of that pollutant.[3] When required, a proposed Action Plan must be submitted to Plaintiffs within 45 (forty-five) days

---

[1] The Numeric Levels for metals marked with an asterisk are hardness dependent.

[2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Permit. However, nothing in this Agreement prevents Defendant from creating a single plan to comply with the Permit and this Agreement, or from including the same BMPs and other measures in an Action Plan under the Permit and this Agreement.

[3] To the extent there is a dispute between the Parties regarding whether another Action Plan is required for an exceedance of a pollutant when there is already an Action Plan being prepared or in the process of being implemented by Defendant, that dispute shall be resolved pursuant to the Dispute Resolution Procedures under Section VII of this Agreement.

after Defendant receives the laboratory results reflecting an Action Plan Triggering Event, unless Defendant requests and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld.

17.1 <u>Action Plan Requirements</u>. The Action Plan shall include at a minimum: (1) the identification of the pollutant(s) causing the Action Plan Triggering Event; (2) an assessment of the potential source of each pollutant discharged that caused the Action Plan Triggering Event; (3) the identification of additional BMPs, if any, that will be designed and implemented for the location(s) of the exceedance discharge in an effort to prevent future exceedances of parameters that triggered the Action Plan (including the possibility of a treatment control BMP, which would be designed to meet the Permit's Design Storm Standard pursuant to Section X.h.6); and (4) time schedules for implementation of proposed BMPs (if any).  Submitting an Action Plan that does not address all of the requirements in this paragraph will be considered a missed deadline after dispute resolution, if any.  However, if the dispute resolution process under this Agreement results in any changes to an Action Plan, Defendant shall have a reasonable time to prepare and submit any updates to said plan subject to the Action Plan Review procedures set forth in Section 17.2.

17.2 <u>Action Plan Review</u>. Plaintiffs shall have thirty (30) days upon receipt of Defendant's proposed Action Plan to approve or provide comments to Defendant on the proposed Action Plan.  If Plaintiffs provide Defendant comments on the proposed Action Plan, Defendant shall have thirty (30) days from receipt of Plaintiffs' comments, unless Defendant requests and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld, to either incorporate Plaintiffs' material comments into the Action Plan and seek Plaintiffs' approval of the modified Action Plan or another round of comments if mutually agreed, or, if Defendant declines to accept one or more of Plaintiffs' material comments, provide Plaintiffs with a written explanation of the grounds for such rejection.  Any disputes over the Action Plan, including any requested extensions, shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement, set out in

Section VII below.  Defendant shall not be required to begin implementation of any Action Plan until Plaintiffs have approved the Action Plan, until the dispute over the Action Plan has been resolved through the Dispute Resolution Procedures, or until mutual agreement of the Parties, whichever is later ("Implementation Triggering Event").

17.3   Disputes regarding the adequacy of a particular aspect of the Action Plan shall not impact the schedule for implementing any other unrelated aspect of the Action Plan.  Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution provisions of this Agreement, set out in Section VII below, which shall not be subject to stipulated penalties.

18.   Defendant shall contact Plaintiffs to request an extension of any deadline set forth in this Agreement, if necessary, at least seven (7) days prior to the deadline at issue. Failure to request an extension, if necessary, in this timeframe will be considered a missed deadline.  Plaintiffs' consent to Defendant's requested extension shall not be unreasonably withheld.

19.   Defendant shall revise its Storm Water Pollution Prevention Plans ("SWPPPs") and/or Monitoring & Implementation Plan ("MIP"), if applicable, within thirty (30) days of resolution of any disputes under the Action Plan, whichever comes first. Defendant shall notify Plaintiffs in writing when the final Action Plan has been completely implemented, and the SWPPP and/or MIP have been revised.

**D.    Visual Observations.**

20.   Until the Termination Date of the Agreement, Defendant shall conduct, and document visual observations required by the Permit and as more fully described in the Facility SWPPP.

**E.    Employee Training.**

21.   Within thirty (30) days of the Effective Date, Defendant shall conduct employee training in order to familiarize employees at the Facility with the requirements of the Permit and this Agreement.  The training program shall include, in particular, the requirements that are contained in this Agreement.

**F.    Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

22.    To the extent not already completed, within thirty (30) days of the Effective Date of this Agreement, Defendant shall revise the Facility's SWPPP and/or MIP as applicable to include: (i) BMPs that are currently utilized at the Facility; (ii) BMPs identified, developed, and implemented pursuant to this Agreement and/or the Permit; (iii) the specific individual(s) or position(s) responsible for compliance with the Permit; (iv) a detailed site map that includes at a minimum all information required by the Permit; (v) a description of each industrial activity, potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source; and (v) all other applicable requirements of the Permit and this Agreement.

23.    Plaintiffs shall provide reasonable and material comments, if any, to Defendant within thirty (30) days of receipt of any revised SWPPP and MIP.  Within forty-five (45) days of receiving comments from Plaintiffs, Defendant shall incorporate Plaintiffs' reasonable and material comments into any revised SWPPP and/or MIP or shall justify in writing to Plaintiffs why any comment is not incorporated.  Any disputes as to the adequacy of the SWPPP and/or MIP shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement set forth in Section VII below.

24.    Additional and Ongoing Revisions to SWPPP and/or MIP. Defendant shall revise the SWPPP and/or MIP if there are any changes in the Facility's operations that may possibly affect the quality of storm water discharges at the, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan. Plaintiffs may review and comment on the revised SWPPP and/or MIP if a significant revision has been made, e.g., change or reduction of Discharge Locations, implementation of advanced BMPs, removal of a constituent to be sampled, etc.

**IV.    CONSULTANT TRUST ACCOUNT**

25.    Consultant: Counsel for Defendant  has retained the services of  Brash Industries Inc. ("BRASH") on behalf of Defendant to aid Defendant with his Permit

compliance. Defendant's Counsel shall maintain a contract for services with BRASH or another qualified consultant for the duration of the Consent Decree. Prior to terminating this agreement with BRASH, Defendant's Counsel shall notify Plaintiffs of its intention to terminate such services and shall obtain written approval to engage a substitute qualified consultant. Plaintiffs' approval shall not be unreasonably withheld.

26.    Trust Account: Defendant shall deposit $15,000, an amount sufficient to cover BRASH' s services for the first Reporting Year of this Consent Decree, with Defense Counsel's client trust account. Such funds shall only be used to pay for storm water consulting services. Defendant shall provide Plaintiffs with confirmation of payment of the deposit within thirty (30) days of the Effective Date.

27.    Consultant Monthly Services and Reporting: BRASH (or a substitute qualified consultant) shall perform monthly physical inspections of the Facility to ensure compliance with the Permit and this Consent Judgement. BRASH shall prepare a monthly compliance report ("Report") which shall be sent to Defendant's Counsel via email within seven (7) days of an inspection. Counsel for Defendant shall review the monthly compliance report and redact any privileged information prior to forwarding the Report to Plaintiffs within seven (7) days of receipt. Compliance reports shall include photographs of all areas visually inspected. Any areas requiring additional or better maintained BMPs shall be specifically noted with corresponding recommended corrective actions. The reports will also evaluate any storm water sample data that became available during the reporting period and make recommendations where applicable for additional or improved BMPs.

## V.    COMPLIANCE MONITORING AND REPORTING

28.    Each Reporting Year for the life of this Agreement, Plaintiffs and their representatives may conduct one (1) noticed site inspection per Reporting Year. The site inspections shall occur during normal business hours, and Plaintiffs shall provide Defendant with at least five (5) business days' notice of an intended inspection. If an inspection is noticed, Plaintiffs will continue to follow the weather forecast, and will

confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Plaintiffs conduct their inspection during a QSE. Plaintiffs will make efforts to conduct their inspection during a QSE, but a lack of a QSE will not prevent Plaintiffs from conducting the inspection. Prior to the inspection, Plaintiff's representatives shall execute and submit to the Defendant or his representative a Site Visit Release in the form provided in Exhibit B. During inspections, Plaintiffs' representatives will wear safety goggles, hard hats, vests, and any other appropriate safety clothing and footwear recommended by Defendant and always remain in the presence of Defendant's representatives. Plaintiffs' inspection team shall consist of no more than four (4) persons. Plaintiffs shall be allowed to take photographs and/or record video(s) of the Facility during the inspection, however, Plaintiffs may not take video or pictures of any materials or equipment at the Facility identified by Defendant as consisting of, indicating, or including confidential proprietary business materials or processes, or any trade secrets, as that term is defined under the Uniform Trade Secret Act, 18 U.S.C. § 1839. If any such photos videos are inadvertently taken, Plaintiffs' will delete such materials as soon as reasonably practicable and not publish, publicize, or in any way release to members of the public any such materials.

29.     During the site inspection, Plaintiffs and/or their representatives shall be allowed access to the Facility's SWPPP, MIP, and other non-privileged monitoring records, reports, and all sampling data produced in accordance with paragraph 15 and its subparts. In addition, during the site inspection, Plaintiffs and/or their representatives may collect split samples of discharges from QSEs, even if outside of the first four hours of discharge, from the Facility, though any such samples should be appropriately identified, and the time of the sampling shall be disclosed to Defendant. Any samples collected by Plaintiffs shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments. Defendant shall have an opportunity to take concurrent measurements using their own equipment. Copies of the complete laboratory reports shall

be provided to Defendant within five (5) business days of receipt. Plaintiffs shall bear all costs of inspection, sampling, and analysis.

30. <u>Reporting and Documents</u>. Until the Termination Date of this Agreement, Defendant shall copy Plaintiffs on all final documents related to storm water discharges or water quality at the Facility that are submitted to the Regional Board and/or State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities, unless such materials contain confidential proprietary business or trade secret material, in which case such information may be removed or redacted prior to non-concurrent submittal to Plaintiffs, which shall be provided to Plaintiffs within five (5) business days of submittal to the aforementioned agencies. Any correspondence related to Defendant's compliance with the Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to Plaintiffs within ten (10) business days of receipt by Defendant.

31. <u>Compliance Monitoring and Oversight</u>. Defendant shall pay a total of ten thousand dollars ($10,000) to compensate Plaintiffs for costs and fees to be incurred for monitoring the Facility's compliance with this Agreement, including, but not limited to, anticipated costs and fees related to Annual Site Inspections, and review of monthly compliance reports.  Payment shall be made within thirty (30) days of the Effective Date payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

32. <u>Action Plan Payment</u>. Defendant shall pay a total of five thousand ($5,000) per Action Plan, deemed to be full payment for all of Plaintiffs' costs to review and comment on any Action Plan submitted.  Payment shall be made within thirty (30) days of the submittal of an Action Plan and payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

/././

**VI.** **Environmental Project, Reimbursement of Fees and Costs, and Stipulated Payments**

33.    Environmental Project. To remediate the alleged environmental harms resulting from non-compliance with the Permit alleged in the Complaint, Defendant agrees to make a combined total payment of fifteen thousand dollars ($15,000) to Environmental Health Coalition to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries.  Payment shall be made payable to: Environmental Health Coalition via certified U.S. Mail to Diane Takvorian, Executive Director, Environmental Health Coalition, 2727 Hoover Avenue, Suite 202, National City, CA 91950 within thirty (30) days of the Effective Date of this Agreement.  The initial payment of five thousand dollars ($5,000) shall be made within thirty (30) days of the effective date.  Defendant shall make ten (10) additional payments in the amount of one thousand dollars ($1,000) to be paid on the 15th day of each succeeding month of the next ten (10) months. Defendant shall provide Plaintiffs with a copy of each such payment at the time it is made.

34.    Reimbursement of Coast Law Group's Fees and Costs. Defendant shall pay a total of fifty thousand dollars ($50,000) to Coast Law Group, LLP, and San Diego Coastkeeper to reimburse investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Agreement.  Payments shall be made as follows: ten thousand dollars ($10,000)  within (30) days of the Effective Date and four thousand  ($4,00) to be paid on the 15th day of each succeeding month of the next ten (10) months.  Funds shall be made payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

35.    Stipulated Payments. Defendant shall make a remediation payment of Two Thousand Five Hundred dollars ($2,500.00) as the sole remedy for each missed deadline included in this Agreement, not excused by Force Majeure or agreement by Plaintiffs. Payments for a missed deadline shall be used to fund environmental project activities that

will benefit the Southern California Bight and its tributaries. Defendant shall have thirty (30) days from notification to cure any missed deadline (i.e., submit the outstanding deliverable) or, in the alternative, invoke the Dispute Resolution Procedures set forth in Section VII below. Unless Dispute Resolution Procedures have been invoked, Defendant agrees to make the stipulated payment within thirty (30) days of notification of a missed deadline to Environmental Health Coalition via certified U.S. Mail to Diane Takvorian, Executive Director, Environmental Health Coalition, 2727 Hoover Avenue, Suite 202, National City, CA 91950. Defendant shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VII.  **DISPUTE RESOLUTION**

36.    This Court shall retain jurisdiction over this matter until the Termination Date for the purposes of implementing and enforcing the terms and conditions of this Agreement and adjudicating all disputes among the Parties that may arise under the provisions of this Agreement.  The Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt.

37.    Meet and Confer. A Party to this Agreement shall invoke the dispute resolution procedures ("Dispute Resolution Procedures") of this Section by notifying all other Parties in writing of the matter(s) in dispute.  The Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of receipt of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

38.    Formal Dispute Resolution. If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the Party initiating the Dispute Resolution Procedures may invoke formal dispute resolution ("Formal Dispute Resolution") by filing a motion before the United States District Court for the Southern District of California. The Parties agree to request an expedited hearing schedule on the motion if requested by any Party.

39.    <u>Burden of Proof</u>. The burden of proof for Formal Dispute Resolution shall be in accordance with applicable law. In the event of any disagreement or dispute between Plaintiffs and Defendant over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Defendant shall bear the burden of demonstrating that their BMPs, collectively, constitute BAT/BCT for the Facility, or that they are in compliance with the terms of this Agreement.

40.    <u>Costs and Fees.</u> The Parties shall be entitled to seek fees and costs incurred in filing or opposing any motion made to the Court for the purpose of Formal Dispute Resolution in Section VII, according to the costs and fees provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

41.    <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, or economic hardship.  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

42.     If Defendant seeks to rely upon paragraph 38 to excuse or postpone performance, it shall notify Plaintiffs in writing as soon as possible, but in no event more than ten (10) business days of the date that Defendant learned of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").

43.     Within ten (10) days of sending the Notice of Nonperformance, Defendant shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure.  Defendant shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

44.     If the Parties disagree on a Notice of Nonperformance, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, or on an extension of time to informally resolve their disagreement, either Party shall have the right to invoke the Dispute Resolution Procedures. If the disagreement cannot be resolved informally and Formal Dispute Resolution is invoked, Defendant shall bear the burden during Formal Dispute Resolution of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VIII.  <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

45.     <u>Plaintiffs' Release</u>. Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendant (and each of its direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and

each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and/or Complaint up to the termination of this Agreement.

46.     Defendant's Release. Upon the Effective Date of this Agreement, Defendant, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waive all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to the termination of this Agreement by the Court.

47.     Nothing in this Agreement limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendant's compliance with the Permit or the Clean Water Act occurring or arising after the Effective Date of this Agreement.

## IX.    MISCELLANEOUS PROVISIONS

48.     No Admission of Liability. Neither this Agreement, the implementation of additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendant maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

49.     Construction. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit,

the Clean Water Act, or specifically herein.

50.    <u>Choice of Law</u>. The laws of the United States and of the State of California for state law questions shall govern this Agreement.

51.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.    <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff Coastkeeper:</u>

San Diego Coastkeeper
Attn: Matt O'Malley
3900 Cleveland Ave Suite 102
San Diego, CA 92103
Email: matt@sdcoastkeeper.org

<u>If to Plaintiff CERF:</u>

Coastal Environmental Rights Foundation
Attn: Sara Kent
1140 South Coast Highway 101
Encinitas, CA 92024
Email: Sara@cerf.org

<u>With Copy to:</u>

Coast Law Group LLP
Attn: Livia Beaudin
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: livia@coastlawgroup.com

<u>For Cal C. Johnson doing business as American Recycling.</u>
American Recycling
Attn: Jesse Johnson
4070 Home Avenue

San Diego, CA 92105
Email: americanrecyclingsd@gmail.com

<u>With Copy to</u>:

S. Wayne Rosenbaum
The Environmental Law Group, LLP
Varco & Rosenbaum
225 Broadway, Suite 1900
San Diego, CA 92101
SWR@Envirolawyer.com

53.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail.   Any change of address or addresses shall be communicated in the manner described above for giving notices.

54.     <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.   Nothing in this Consent Decree shall be construed to affect, limit, or increase in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

55.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

56.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

57.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

58.     <u>Integration Clause</u>. This is an integrated Consent Decree.   This Consent

1    Decree is intended to be a full and complete statement of the terms of the agreement

2    between the Parties and expressly supersedes any and all prior oral or written agreements,

3    covenants, representations, and warranties (express or implied) concerning the subject

4    matter of this Consent Decree.

5         59.    Authority of Counsel. The undersigned representatives for Plaintiffs and

6    Defendant each certify that he/she is fully authorized by the Party whom he/she represents

7    to enter into the terms and conditions of this Consent Decree.

8         60.    Authority of Parties. Each Party certifies that its undersigned representative(s)

9    is fully authorized to enter into this Consent Decree, to execute it on behalf of that Party,

10    and to legally bind that Party to the terms of this Consent Decree.

11         61.    The Parties, including any successors or assigns, agree to be bound by this

12    Consent Decree and not to contest its validity in any subsequent proceeding to implement

13    or enforce its terms.

14         **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree

15    as of the date first set forth below.

16    APPROVED AS TO CONTENT

17    Dated:    6/28/2021    By:

18                          Name: Dr. Cindy J Lin
19                          Title: Board President
20                          San Diego Coastkeeper

21    Dated:    6/29/2021    By:
22                          Name: Sara Kent
23                          Title: Programs Director
24                          Coastal Environmental Rights Foundation

25    Dated:    By:
26                          Cal C. Johnson

27

28

---

Consent Decree                     22                     Civil Case No. 3:21-cv-00191-L-BLM

Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

59.    **Authority of Counsel.** The undersigned representatives for Plaintiffs and Defendant each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

60.    **Authority of Parties.** Each Party certifies that its undersigned representative(s) is fully authorized to enter into this Consent Decree, to execute it on behalf of that Party, and to legally bind that Party to the terms of this Consent Decree.

61.    The Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____        By:_____
                                    Name:_____
                                    Title:_____
                                    San Diego Coastkeeper


Dated: _____        By:_____
                                    Name:_____
                                    Title:_____
                                    Coastal Environmental Rights Foundation


Dated: 6/28/21        By: _____
                      Cal C. Johnson

APPROVED AS TO FORM

Dated: _6/29/2021_                    By: _____
                                      Livia Borak Beaudin
                                      Coast Law Group LLP
                                      Attorneys for CERF


Dated: _6/29/2021_                    By: _____
                                      Matt O'Malley
                                      Attorney for San Diego Coastkeeper



Dated: _____           By: _____
                                      S. Wayne Rosenbaum
                                      The Environmental Law Group, LLP
                                      Attorney for Cal C. Johnson


**IT IS SO ORDERED.**


Date: _____            _____
                                      Judge Barbara Lynn Major
                                      United States Magistrate Judge
                                      Southern District of California

APPROVED AS TO FORM

Dated: _____          By: _____
                                    Livia Borak Beaudin
                                    Coast Law Group LLP
                                    Attorneys for CERF


Dated: _____          By: _____
                                    Matt O'Malley
                                    Attorney for San Diego Coastkeeper



Dated: ___June 24, 2021___          By: _S. Wayne Rosenbaum_
                                    S. Wayne Rosenbaum
                                    The Environmental Law Group, LLP
                                    Attorney for Cal C. Johnson


**IT IS SO ORDERED.**

Dated:  9/2/2021

_Barbara Major_
Hon. Barbara L. Major
United States Magistrate Judge





EXHIBIT A





# SITE PLAN

Scale: 1" = 32'    22,500 sq ft

Orig. 7/1/21

WDID# 9 37i023148
American Recycling
4070 Home Ave
San Diego, CA 92150
(619) 266-8456

95 %   Impervious    Crushed Rock

★ Sample Point (DP#)
◇ Hazardous Material    + Nearest Water Body
⊞ Air Compressor    ■ Storm Drain
⊠ Storage Racks    ⊕ Yard Drain Inlet
  4x6 Bins

## CALIFORNIA METAL SERVICES, INC. FACILITY ACCESS VISITOR RELEASE FORM AND WAIVER OF LIABILITY

In consideration of being granted the right to visit the American Recycling facility located at 4070 and 4080 Home Avenue, San Diego California 92105 (the "Site") owned, operated or managed by Cal C. Johnson doing business as American Recycling ("American Recycling"), I acknowledge, agree and represent that I am aware that the American Recycling Site is a metals recycling facility which can be a dangerous environment, despite the safety precautions taken by American Recycling. I further agree and warrant as follows:

1. To the fullest extent permitted by law, I hereby release, waive, and discharge, on behalf of myself, my heirs, assigns, guardians, and legal representatives, any and all claims, damages, or losses I may have against American Recycling, its individual officers, administrators, employees and agents, acting officially or otherwise, arising from any and all injuries that I may incur during my visit to the Site, including, but not limited to, liability for property damage or loss, or bodily, personal or mental injury, including death, and further covenant that I will not sue American Recycling for any and all injuries or claims I may suffer during any Site visit.

2. I agree to hold harmless and indemnify American Recycling against any liability or damages that American Recycling may incur arising from my negligence during my visit to the Site.

3. I acknowledge that it is my sole responsibility to evaluate carefully the risks inherent in visiting the Site and that I have fully considered those risks, including, without limitation, dangers posed by willful or negligent conduct of myself and/or by others.

4. I acknowledge and voluntarily assume full responsibility for, and full risk of, property damage or loss, or bodily, mental, or personal injury, including death, relating to my visit to the Site.

5. I acknowledge that I am not an employee of American Recycling or any of its agents during my visit to the Site.

6. I agree that I shall use due care upon entry onto the Site, not undertake any act that may result in injury, not interfere with any activities at the Site, or touch or handle any materials found at the Site.

7. I agree that the following precautions must be observed at all times during the site visit:
   a. Hard hats, safety vests, safety glasses and appropriate flat soled footwear must be worn;
   b. All warning signs and barricades must be obeyed;

    c.  Do not stray from approved path for ingress and egress;
    d.  Do not enter areas with inadequate lighting;
    e.  Be aware of and stay clear of any overhead hazards;
    f.  Smoking is prohibited;
    g.  Do not touch or walk on wires, piping, ductwork, conduit or other construction materials of any kind;
    h.  Climbing on ladders or scaffold is prohibited
    i.  Do not lean on or reach beyond any handrails or barricades
    j.  Be aware that walking surfaces may be uneven or have other impediments and that extreme care should be taken with each step.

8. I agree that if any portion of this document is held invalid, the remaining provisions shall be binding and continue in full force and effect.

9. I acknowledge that the Site visit and its activities have been explained to me, and all of my questions answered to my complete satisfaction.

**I have read the Visitor Release Form and Waiver of Liability carefully, understand its significance, and voluntarily agree to all of its terms.**

**THIS IS A RELEASE OF LEGAL RIGHTS. READ CAREFULLY BEFORE SIGNING**

Visitor (print name):_____

Signature:_____

Date:_____

**NOTE**: All required signatures must be completed and this Form returned before the Visitor may visit the Site.